UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KIMBERLY ANN LABAN, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 2:11-CV-332 RLM |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

Kimberly Laban seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), 1381a. For the reasons that follow, the court reverses and remands this case to the Social Security Administration for further proceedings consistent with this opinion.

Ms. Laban filed her initial application for disability benefits in April 2007 based on complaints of back, stomach, and chest pains, irritable bowel syndrome, and bipolar disorder, with an onset date of October 1, 2005; her application was denied initially and on reconsideration. Ms. Laban requested an administrative hearing, which was held on October 22, 2009 before Administrative Law Judge

---

[1] Carolyn W. Colvin, Acting Commissioner of Social Security, has been substituted as the defendant in this action pursuant to the automatic substitution provisions of Federal Rule of Civil Procedure 25(d).

Jose Anglada, who heard testimony from Ms. Laban, who was represented by counsel, and Glee Ann Kehr, a certified vocational expert. The ALJ issued his written decision on March 25, 2010 following the standard five-step sequential evaluation used in these matters, *see* 20 C.F.R. § 404.1520(a), and concluded that even though Ms. Laban suffered from a disorder of the gastrointestinal system and an affective disorder, which caused more than minimal restrictions to her ability to work, she didn't have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ concluded the overall record supported a finding that Ms. Laban had the residual functional capacity to perform light work with restrictions. The vocational expert testified that based on Ms. Laban's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of light work, such as that of her past work as a shirt presser. The ALJ's decision of "not disabled" became the final decision of the Commissioner of Social Security when the Appeals Council denied Ms. Laban's request for review on July 6, 2011. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed; the court has jurisdiction under 42 U.S.C. § 405(g).

The court must affirm the Commissioner's determination if it is supported by substantial evidence, 42 U.S.C. § 405(g); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,

401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't re-weigh the evidence, make independent findings of fact, decide questions of credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), but in reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

To qualify for disability benefits, a claimant must be "disabled," defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Liskowitz v. Astrue, 559 F.3d 736, 739-740 (7th Cir. 2009) (*quoting* 42 U.S.C. §§ 423(a)(1)(E) and 423(d)(1)(A)). When a claimant alleges disability, Social Security regulations provide this five-step inquiry to use in evaluating whether the claimant is entitled to benefits: (1) Is the claimant engaged in substantial gainful activity? If so, the claimant isn't

3

disabled, and the claim is denied; if not, the inquiry proceeds to step 2. (2) Does the claimant have an impairment or combination of impairments that are severe? If not the claimant is not disabled, and the claim is denied; if so, the inquiry proceeds to step 3. (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, the inquiry proceeds to step 4. (4) Can the claimant do his or her past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step 5. (5) Can the claimant perform other work given his or her residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also* Scheck v. Barnhart, 357 F.3d 697, 699-700 (7th Cir. 2004).

Ms. Laban challenges the ALJ's decision that she isn't disabled, arguing that the ALJ (i) improperly discounted the opinions of her treating physicians, (ii) erred in assessing her credibility, (iii) rendered an improper RFC finding, and (iv) improperly concluded at Step 4 that she could perform her past work. Two of her contentions require reversal; and the court need not address Ms. Laban's other challenges.

Ms. Laban claims the ALJ erroneously dismissed her credibility and didn't consider her testimony about how her mental impairments impact her ability to function. An ALJ's credibility determinations "are entitled to special deference

4

because the ALJ is in a better position than the reviewing court to observe a witness," but those determinations "are not immune from review." Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 354 (7th Cir. 2005) (citation omitted); *see also* Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir. 2007) ("Because the ALJ is in the best position to observe witnesses, [the court] will not disturb [his] credibility determinations as long as they find some support in the record.") (citation omitted). When evaluating credibility, an ALJ must "'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009) (*quoting* SSR-7p). The reviewing court must determine whether the ALJ's determination "was reasoned and supported," Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008), and should not "overturn an ALJ's credibility determination unless it is 'patently wrong.'" Shideler v. Astrue, 688 F.3d 306, 311 (7th Cir. 2012) (quotations omitted).

The ALJ reviewed Ms. Laban's testimony in his report, noting that she reported that she's too nervous to drive so she relies on friends and public transportation to get around, she's been diagnosed with bipolar disorder, she meets monthly with a psychiatrist and takes medication to treat her condition, she has back pain, and she has irritable bowel syndrome, which results in frequent trips to the bathroom. The ALJ also noted that Ms. Laban testified that she could lift and carry ten pounds, walk for half an hour, sit for fifteen minutes at a time, and bend occasionally.

The ALJ evaluated Ms. Laban's impairments under sections 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders) of the Listing of Impairments. 20 C.F.R. § 404.1520a. Both Listings provide that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.02, 12.04. To meet the requirements of either Listing 12.02 or 12.04, a claimant must satisfy the criteria of part A of the Listing and show, under part B, that those medical conditions result in at least two of the following: (1) marked restriction of activities of daily living, or (2) marked difficulties in maintaining social functioning, or (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, app 1, §§ 12.02(B), 12.04B. Alternatively, to meet the requirements of Listing 12.02C or 12.04C, a claimant must point to evidence of his or her inability to function outside a structured environment or a highly supportive living arrangement. 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.02C, 12.04C.

The ALJ concluded Ms. Laban hadn't met the criteria of either part B listing, specifically finding that:

> In activities of daily living, [Ms. Laban] has mild restriction. . . . In social functioning, [Ms. Laban] has moderate difficulties. . . . With regard to concentration, persistence or pace, [Ms. Laban] has moderate difficulties. . . . As for episodes of decompensation, the record reveals that [Ms. Laban] has experienced no episodes of decompensation, which have been of extended duration. . . . Because [Ms. Laban's] mental impairment does not cause at least two 'marked'

> limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied.

Too, the ALJ concluded that Ms. Laban "is able to shop, pay bills, clean, cook and take care of her personal hygiene," "gets along well with neighbors," "has a relationship with her minor child and 19 year old son," and, although she doesn't drive, is able to get rides from friends or use public transportation to get around, showing that Ms. Laban didn't meet the part C criteria of either Listing.

In determining a claimant's credibility, an ALJ must consider a claimant's level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record. Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009). The ALJ reviewed Ms. Laban's testimony and medical records and concluded that her statements about the intensity, persistence and limiting effects of her symptoms weren't credible "to the extent they are inconsistent with the [] residual functional capacity assessment."

Our court of appeals has criticized that boilerplate credibility language as "unhelpful," Shauger v. Astrue, 675 F.3d 690, 696-697 (7th Cir. 2012), "opaque," Bjornson v. Astrue, 671 F.3d 640, 644-645 (7th Cir. 2012), and "meaningless," Parker v. Astrue, 597 F.3d 920, 921-922 (7th Cir. 2010). Courts disapprove of the boilerplate language because makes it impossible to know what the ALJ believed, except by starting with the final conclusion and working back toward the beginning, throwing out any part of the claimant's testimony that is inconsistent

7

with the residual functional capacity finding. The reviewing court is left to guess what the ALJ believed or disbelieved because the ALJ didn't explain it with specificity. Use of the boilerplate doesn't always require reversal; not supporting a credibility determination with explanation and evidence from the record does. Pepper v. Colvin, 712 F.3d 351, 367-368 (7th Cir. 2013); Brindisi v. Barnhart, 315 F.3d 783, 787-788 (7th Cir. 2003).

The ALJ's findings regarding whether, in light of her RFC, Ms. Laban can perform her past work is at least as vague as the boilerplate credibility language. The ALJ concluded that Ms. Laban could perform her past work as a waitress and/or presser. Ms. Laban says the ALJ's conclusion conflicts with the vocational expert's conclusion that a person with her limitations – light work with three unscheduled breaks per week for an average of ten minutes each, with a moderate inability to understand, remember, carry out detailed instructions, pay attention for extended periods, and interact appropriately with the public – couldn't work as a waitress. That's what the vocational expert said; the ALJ's statement that Ms. Laban could perform her past work as a waitress conflicts with the vocational expert's conclusion. But the ALJ also found that Ms. Laban could do her past work as a presser. Ms. Laban says the ALJ's conclusion that she could work as a presser was based on an incomplete hypothetical that didn't include the temperature and environmental limitations or the limitation that she not work with dangerous machinery set forth by Dr. Sands.

8

The ALJ said in his report that his hypothetical to the vocational expert incorporated the limitations he found to be consistent with the objective medical evidence, *i.e.*, that Ms. Laban can lift and carry ten pounds frequently and 20 pounds occasionally; can stand and walk for six hours in an eight-hour workday; can sit for two hours in an eight-hour workday; must make three trips to the bathroom three times per week, requiring unscheduled breaks of ten minutes each; and has a moderate ability (a level of five on a scale of one to ten) to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public.

The ALJ explained in his report that any "proposed additional hypothetical limitations or impairments greater or more limiting than those included in the detailed RFC assessment . . . are excluded because the undersigned did not find the limitations or impairments to be supported by the objective medical and other evidence." That language is at least as opaque as the credibility boilerplate. In addition, the vocational expert testified that she heard the testimony at the hearing, examined the exhibits in the file, and prepared a summary of Ms. Laban's past work as a shirt presser and a waitress, light work positions "both as the DOT describes it and as she performed it."

A reviewing court, then, is left with this syllogism:

> (1) if any part of Ms. Laban's testimony was inconsistent with the ALJ's RFC finding, the ALJ disbelieved it;

9

>    (2) if any part of the evidence was inconsistent with the RFC described in the ALJ's hypothetical, the ALJ disbelieved it for reasons that might or might not have been articulated elsewhere in the ALJ's opinion; but
>
>    (3) in case that record isn't enough, the vocational expert might have taken care of it by virtue of having listened to the testimony at the hearing.

That isn't the bridge from the record to the conclusions that an ALJ is expected to provide to a reviewing court. Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013); *see also* Arnett v. Astrue, 676 F.3d 586 (7th Cir. 2012) (boilerplate credibility language left RFC determination unexplained). Unable to say what the ALJ believed or why, the court cannot affirm the Secretary's decision with respect to Ms. Laban.

For these reasons, the court REVERSES the Secretary's denial of benefits and REMANDS the case to the Secretary for further proceedings.

SO ORDERED.

ENTERED:   March 10, 2014

　　　　　　　　　　　　　　　　 /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Judge, United States District Court